**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

AURORA HEALTHCARE, INC.
and ERMED, S.C.,

    **Plaintiffs and Counterclaim**
    **Defendants,**

  vs.                                                Case No. 03-C-0612

CODONIX, INC.,

    **Defendant, Counterclaimant,**
    **and Third-Party Plaintiff,**

  vs.

HARTFORD FIRE INSURANCE COMPANY,

    **Third-Party Defendant.**

---

## DECISION AND ORDER

---

        This contract dispute between Aurora Health Care, Inc., and ERMED, S.C. on one side (collectively "Aurora") and CodoniX, Inc. ("CodoniX") on the other presents, broadly speaking, an age-old and simple question: who breached?[1] A third party complaint, however, makes this litigation more complicated. CodoniX impleaded its insurance company, Hartford Fire Insurance Company ("Hartford"), as a third-party defendant. CodoniX says that Hartford's agent, Sheehan Insurance Group ("Sheehan"), represented to CodoniX that CodoniX would have

---

[1] The agreement was actually entered into between ERMED, S.C. and CodoniX. The terms of the agreement, however, make Aurora a third-party beneficiary of the agreement and allow Aurora to enforce the obligations of the agreement. In order to keep the discussion simple in this opinion the Court will refer to both ERMED and Aurora jointly as "Aurora."

a type and amount of coverage that CodoniX never actually got. Nevertheless, says CodoniX, Hartford is liable, because of its agent's representations, to provide the coverage that CodoniX *believed* it had. If that is the case, Hartford may have to defend and indemnify CodoniX in the action against Aurora. Thus, CodoniX sued Hartford for reformation of contract, equitable estoppel, promissory estoppel, breach of contract and negligence. To top it all off (at least for the time being), Hartford wants to implead Sheehan, but cannot do so in this Court because of jurisdictional shortcomings.

The parties have raised several procedural matters. CodoniX moved the Court to bifurcate the issues of liability and coverage pursuant to Rule 42(b) of the Federal Rules of Civil Procedure. Codonix also requested that issues of liability be stayed while the coverage issues are resolved. Supporting CodoniX's motion to bifurcate and stay, Hartford moved the Court to transfer insurance coverage issues to the federal district court in the Eastern District of Virginia. Each of those motions is now before the Court, but more background on this case will be helpful before the Court engages in its legal analysis.

## *I. BACKGROUND*[2]

CodoniX makes a computer software product, called Emergency Department Total Clinical Documentation System (the "Software"), which is designed to help hospitals and health clinics collect and manage data, manage their billings, and document medical charts, among other functions. In early 2002 Aurora entered a product licensing agreement (the "Agreement") with CodoniX to use the Software. The Agreement calls for Aurora to pay Codonix a sum of money

---

[2]The facts are taken as presented in the pleadings.

in exchange for which CodoniX allows Aurora to use its software. CodoniX also agreed to install and implement the software.

Aurora used the software for less than one year—July 2002 through April 2003—before it terminated its agreement with CodoniX. After less than two weeks with the software, Aurora began to identify failures in the Software and notified CodoniX. CodoniX responded, in an effort to correct the failures, but the failures apparently continued. Each time a failure occurred, CodoniX tried to repair or modify the Software and create revised versions. Ultimately, however, Aurora was unhappy with the Software's performance. (CodoniX tells the story differently, claiming that it provided Aurora with newly customized versions of the software to meet Aurora's "ever-changing specifications.") In April 2003, Aurora notified CodoniX that Aurora was terminating the Agreement. Taking the position that any problems with the Software were the result of Aurora's own failures to follow the terms of the agreement, CodoniX refused to refund any of Aurora's money.

As a result, Aurora brought this action against CodoniX. Aurora incurred significant expense in an effort to implement the software. Aurora paid over $189,000 to CodoniX and, since the software was delivered in July 2002, Aurora also incurred over $440,000 in costs for consultants, pre-production acceptance testing, and equipment necessary to run the Software. CodoniX counterclaimed, alleging breach of contract; breach of the implied covenant of good faith, fair dealing, and the duty of cooperation; and tortious interference with contractual relations.

Hartford came to be a part of this litigation in a less direct way. In early 2003, CodoniX was in the market for errors and omissions insurance and an umbrella insurance policy. CodoniX instructed Sheehan, an insurance group authorized to sell Hartford insurance, to secure such errors and omissions coverage and an umbrella policy through Hartford. In February 2003, Sheehan informed CodoniX by fax that its new policy with Hartford "has been endorsed effective 02/14/03 to add the $1,000,000 E&O coverage as well as the additional $1,000,000 in umbrella coverage." (CodoniX, Inc.'s Am. Third Party Compl. ¶ 13.) Sheehan went on: "This gives CodoniX a total of $3,000,000 of E&O coverage. The Hartford is bound effective 02/14/03 . . . ." (*Id.*) Accordingly, CodoniX believed it had errors and omissions coverage when this lawsuit arose.

CodoniX tendered the defense of this lawsuit to Hartford but Hartford declined based on the terms of the policy. Conceding that the insurance contract does not provide the level of coverage CodoniX intended, CodoniX brought Hartford into this action as a third-party defendant alleging that Hartford's agent, Sheehan, bound Hartford when Sheehan represented to CodoniX that it had errors and omissions coverage up to $3,000,000. In short, CodoniX alleges that Hartford is bound by the acts of its agent upon which CodoniX reasonably relied.

## *II. ANALYSIS*

Three questions are presented by these motions and each is clear. First, should the Court bifurcate the first-party claims (liability issues) from the third-party claims (coverage issues)? Second, should venue be transferred to the Eastern District of Virginia at Hartford's

request? And, finally, if bifurcation is granted or venue is transferred, should the liability issues be stayed while coverage issues are tried?

**A. Bifurcation**

The first question is whether the Court should bifurcate the first-party claims from the third-party claims. Rule 42(b) of the Federal Rules of Civil Procedure allows a court to order separate trials of "any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue" in an action if doing so would promote "convenience or . . . avoid prejudice, or when separate trials would be conducive to expedition and economy." Fed. R. Civ. P. 42(b). "Only one of these conditions need be met for the court to order a Rule 42(b) separate trial." *MCI Comms. Corp. v. American Tel & Tel. Co.*, 708 F.2d 1081, 1166 (7th Cir. 1983). The burden is on the moving party to show that one of those conditions is met. *Reber v. Samsung Electronics America, Inc.*, 220 F.R.D. 533, 536 (N.D. Ill. 2004). Ultimately, the decision to bifurcate is left to the sound discretion of the Court. *See, e.g.*, *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) (reviewing for abuse of discretion the district court's decision to bifurcate) (citing *McLaughlin v. State Farm*, 30 F.3d 861, 870 (7th Cir. 1994)).

CodoniX maintains that separating the issues of liability and coverage in this case will promote convenience and be conducive to expedition and economy. Aurora, for its part, does not oppose bifurcating the issues. The facts and law involved in the insurance coverage issues are different from the facts and law involved in the liability issues. It will be more convenient for the parties to try the issues one at a time, it will be more manageable for all

involved, and it will maintain a sharper focus on the operative facts and law. Consequently, the Court will bifurcate the first-party claims from the third-party claims.

**B. Transfer of Venue**

Takings matters one step further than CodoniX, Hartford has asked the Court to transfer coverage issues to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a).[3] CodoniX, opposing Hartford's motion, rejoins that Hartford has no standing to request a transfer of venue under § 1404(a) because Hartford is a third-party defendant. This is an issue over which courts are split.

The courts that have determined that third-party defendants do not have standing to bring a motion to transfer venue under § 1404(a) employ logic that goes like this: since the statutory requirements for venue do not apply to third-party actions, third-party defendants may not request a transfer of venue in the interest of justice under § 1404(a). *See Gundle Lining Constr. v. Adams County Asphalt*, 85 F.3d 201, 209 (5th Cir. 1996); *Pelinski v. Goodyear Tire & Rubber Co.*, 499 F. Supp. 1092, 1095 (N.D. Ill. 1980) (calling into question, but not determining, whether third-party defendants have standing to seek transfer of venue); *Seafood Imports, Inc. v. A.J. Cunningham Packing Corp.*, 405 F. Supp. 5, 8 (S.D.N.Y. 1975). That conclusion is a leap, however. The statutory requirements for venue do not apply to third party actions, but that prevents a third party only from objecting to venue (in other words, using venue as a defense). Objecting to venue is quite different from requesting that the Court make a discretionary transfer of venue.

---

[3]Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

–6–

Third-party defendants do not have standing to object to venue, but requesting a transfer of venue under 28 U.S.C. § 1404(a) is an entirely different thing. *One Beacon Ins. Co. v. JNB Storage Trailer Rental*, 312 F. Supp. 2d 824, 829 (E.D. Va. 2004) ("[A] motion for transfer is not a defense that venue is improper.") ; *see also* Moore's Federal Practice (Judicial Code Pamphlet) § 1404.2[3] (3d ed. 2005) ("Because a motion for transfer of venue under § 1404(a) is not an objection to the propriety of venue under Fed. R. Civ. P. 12(b)(3), it is not subject to the time limits or waiver rules of Rule 12."). There are good reasons why a third-party defendant may not object to venue. First, as mentioned above, third-party defendants may not object to venue because third-party claims need not independently satisfy statutory venue requirements (of course, the Court must always have personal jurisdiction over all parties). Instead, third-party claims are considered closely related to the underlying action and satisfy the requirements for supplemental jurisdiction under 28 U.S.C. § 1367. *See* 3 Moore's Federal Practice § 14.42 (3d ed. 2005). Second, an objection to venue is waived if not raised in a motion before a responsive pleading or in the responsive pleading itself. Fed. R. Civ. P. 12(h)(1). If a first-party defendant waives an objection to venue, and later impleads a third-party defendant who can object to venue, there may be no end to the time for objecting to venue (by some party or another). Rule 12(h) would then provide little protection to plaintiffs, particularly in the event that defendants and third-party defendants collude to defeat a plaintiff's choice of venue. *See Daily Express, Inc. v. N. Neck Transfer Corp.*, 483 F. Supp. 916, 917-18 (M.D. Pa. 1979). Finally, Rule 14 of the Federal Rules of Civil Procedure, which allows for the addition of third-party claims to an action, is designed to avoid duplicative or overlapping litigation. *See generally*

3 Moore's Federal Practice § 14.42 (3d ed. 2005). Objections to venue by third-party defendants would defeat that design by allowing third-party defendants to seek dismissal from the case on technical grounds, thus forcing the third-party claims to be brought elsewhere.

None of the concerns that underlie the rule that third-party defendants may not object to venue are implicated by a third-party defendant's request to transfer venue. Section 1404(a) was created "as a 'federal housekeeping measure,' allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 613 (1964)). A party who requests a transfer of venue has conceded that venue is proper in the court where the request is made. *One Beacon Ins. Co.*, 312 F. Supp. 2d at 829 n.2; *cf. Daily Express*, 483 F. Supp. at 918 ( "A Motion to Transfer under § 1404 differs from a Motion under § 1406 in that there is no claim that venue is improper as to the original Plaintiff and Defendant."). Instead of *challenging* venue, the moving party is suggesting that although this venue is proper, another is more convenient. That concession alone does away with the concerns that underlie the rule preventing third-party defendants from objecting to venue.[4] Section 1404(a) leaves the matter within the Court's discretion; it does not force delays, nor defeat the purposes behind the venue statutes. In addition, the language of § 1404(a) does not suggest any limitation on who may bring the motion to transfer venue; even the Court may

---

[4]Specifically, in a motion under § 1404(a), the third-party defendant is not seeking to require independent satisfaction of statutory venue requirements, nor objecting to venue, nor (in most instances) creating overlapping litigation (because only entire actions may be transferred, not just parts of actions).

This action is unique because the concern for overlapping litigation is present here. Hartford seeks to create a new action (a matter that the Court takes up in due course) out of the coverage issues and move that action to the Eastern District of Virginia. Despite the resulting overlapping litigation—which does undermine the purpose of Rule 14—the interest of justice will be served by severing the coverage issues from this litigation and transferring them, as the Court will show below. Moreover, the fact that the concern for overlapping litigation is present *in this case* does not defeat the notion that, as a rule, third-party defendants have standing to request transfer of venue.

transfer *sua sponte*. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."); *One Beacon Ins. Co.*, 312 F. Supp. 2d at 829. The Court is satisfied that third party defendants have standing to request a transfer of venue under § 1404(a). *See, e.g.*, *One Beacon Ins. Co.*, 312 F. Supp. 2d at 828; *Kendall U.S.A., Inc. v. Central Printing Co.*, 666 F. Supp. 1264 (N.D. Ind. 1987); *Krupp Int'l, Inc. v. Yarn Indus., Inc.*, 615 F. Supp. 1103, 1107 (D. Del. 1985); *Daily Express, Inc.*, 483 F. Supp. at 918; *Underwood v. Continental Assurance Co.*, 1414 F. Supp. 635 (S.D. Tex. 1956); 17 Moore's Federal Practice § 111.16[2] (3d ed. 2005) (noting that courts are split on whether third-party defendants have standing to request transfer of venue under § 1404(a) and concluding that "[t]he decisions granting third-party defendants standing to move for a convenience transfer represent the better view.").

Hartford's simple request for a transfer has another problem, though: only entire actions may be transferred, not individual claims. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518-19 (10th Cir. 1991); *cf. In re Flight Transp. Corp. Sec. Litig.*, 764 F.2d 515, 516 (8th Cir. 1985) (holding that § 1404(a) does not authorize limited transfer for purposes of trial while transferor court retains jurisdiction for all other purposes). Although the Court has bifurcated the third party claims (coverage issues) from the rest of this action, this action is still singular. In order to transfer the third party claims, the Court must first sever them from the rest of the case pursuant to Federal Rule of Civil Procedure 21, which states "[a]ny claim against a

party may be severed and proceeded with separately."[5] The distinction between bifurcation under Rule 42(b) and severance under Rule 21 is not inconsequential. Bifurcation simply separates issues within a single action. No final judgment may be entered on anything until final judgment is reached as to all issues and parties. *Rice v. Sunrise Express*, 209 F.3d 1008, 1014 n.8 (7th Cir. 2000). Severance, on the other hand, creates two separate actions, "each capable of reaching final judgment and being appealed." *Id.* Simply put, for purposes of transferring only certain claims in an action, bifurcation will not do the trick—severance is required. *Chrysler Credit Corp.*, 928 F.2d at 1519 ("When transferring a portion of a pending action to another jurisdiction, district courts must first sever the action under Rule 21 before effectuating the transfer.")

In considering a motion to sever, the Court should consider several things including convenience of the parties, avoidance of prejudice, and judicial efficiency. *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 918 F. Supp. 343, 350 (D. Kan. 1996); *see also Spencer, White, & Prentis Inc. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974) (noting that severance under Rule 21 presupposes that the issues in a case are separable both logically and legally). In addition, the Court is also mindful that severance of peripheral claims is appropriate where the "administration of justice would be materially advanced." *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 665 (E.D. Va. 1998). In this instance, the only reason to sever is to enable a

---

[5]Hartford overlooked the severance requirement in its initial brief in support of its motion to transfer. That oversight, fortunately for Hartford, has little practical effect. As the Court will discuss shortly, the test for severance involves the same factors considered in the test for transfer. So, in its brief when Hartford made its showing in support of transfer, it also made its showing for severance (albeit unwittingly). Moreover, CodoniX and Aurora were both aware of the oversight and argued specifically against severance.

Of course, rather than severing the coverage claims the Court could transfer the entire action, bifurcated claims and all, to the Eastern District of Virginia. But Hartford clearly has not made such a request. In fact, Hartford specifically waived such a request when, in its reply brief, Hartford noted that despite its failure to specifically request severance in its initial brief, severance and transfer is Hartford's goal. So the Court need not consider whether it would be equitable to transfer the entire action.

transfer. If the Court does not intend to transfer the newly formed action, there is no point in severing the coverage claims under Rule 21 rather than simply bifurcating the original action under Rule 42(b). Fortunately, the two tests—that for severance and that for transfer of venue—run together.

Section 1404(a) of Title 28 of the United States Code permits a transfer of venue "for the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where [the action] might have been brought." 28 U.S.C. § 1404(a). The three statutory factors for transfer under § 1404(a) consume the factors that must be considered in the test for severance. The first factor in the transfer analysis, convenience of the parties, is an identical match to the first factor in the severance analysis. The second factor in the transfer analysis, convenience of the witnesses, is a consideration exclusively for the transfer analysis. The final factor in the transfer analysis, the interest of justice, has a broad scope that consumes the remaining factors in the severance analysis (like avoidance of prejudice and judicial efficiency). *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986)("The 'interest of justice' analysis relates, then, to the efficient functioning of the courts, not to the merits of the underlying dispute."). The practical result: this Court must take up but one inquiry into whether severance and transfer should be effected.

It is appropriate, first, to expand a bit more on how the Court must consider a request to transfer venue. The Court is limited to considering the three factors articulated in the statute—(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice—but "these are best viewed as placeholders for a broader set of considerations,

the contours of which turn upon the particular facts of each case." *Coffey*, 796 F.2d at 219 n.3. In other words, "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotations omitted). The Court will not transfer if doing so will merely shift the inconvenience from one party to the other. *Cent. States, Se. & Sw. Areas Pension Fund v. Brown*, 587 F. Supp. 1067, 1070 (N.D. Ill. 1984). The movant bears the burden of showing, by reference to particulars, that transfer is clearly more convenient. *Coffey*, 796 F.2d at 219-20. Like the decision to bifurcate, the decision to transfer venue is left largely to the discretion of the trial judge. *Gen'l Portland Cement Co. v. Perry*, 204 F.2d 316, 319 (7th Cir. 1953); *see also Ford Motor Co. v. Ryan*, 182 F.2d 329, 331 (2d Cir. 1950) ("At best, the judge must guess and we should accept his guess unless it is too wild.").

In this case, the convenience of the parties cuts both ways, but ultimately favors a Virginia forum. CodoniX argues that Wisconsin is the more convenient forum because CodoniX and Hartford have been litigating in this forum already. Yet, both companies have significant contacts with Virginia and could easily litigate the action there. CodoniX readily admits that the facts and law involved in the coverage claims are different from the facts and law involved in the liability claims, so there is no obvious need to keep the coverage and liability claims together. Moreover, it is disingenuous of CodoniX to suggest that Wisconsin would be more convenient simply because CodoniX is already in Wisconsin—CodoniX's principal place of business is in Virginia and it is hard to believe that Virginia would be less convenient than Wisconsin for CodoniX. In addition, Hartford intends to sue Sheehan, which can be brought into this coverage

dispute in Virginia but not in Wisconsin. Because Sheehan can be impleaded in Virginia and not Wisconsin, and because Virginia is not inconvenient for either CodoniX or Hartford (even though CodoniX is already participating in litigation here), the convenience of the parties clearly weighs in favor of a Virginia forum.

Likewise, the convenience of the witnesses favors a Virginia forum. Hartford's key witnesses are in North Carolina, much closer to Virginia than Wisconsin. Sheehan is in Virginia (and presumably its witnesses are, too). Codonix argues that two of its witnesses do not live in Virginia and would not be better convenienced by that forum, but the argument is unpersuasive. One of the two witnesses, William Boles, lives in California. Perhaps if Mr. Boles lived in Chicago the argument would be compelling, but coming from California he will be inconvenienced whether this action is in Virginia or Wisconsin. Since Mr. Boles also happens to be an officer of CodoniX, it cannot be too much to expect him to travel to Virginia where CodoniX is headquartered—indeed, it may even be fair to say that such a trip would be more convenient than a trip to Wisconsin, since Mr. Boles is likely accustomed to the area where his company is headquartered. As for the other witness, Andrew Muchmore, CodoniX gives no evidence of his actual residence. Suffice it to say that the bare statement that Mr. Muchmore does not live in Virginia is not helpful, because if he lives in Maryland—which as far as the Court is aware, is as likely as his living in Illinois or anywhere else—the argument would not carry the day. Codonix does business principally in Virginia, Hartford does significant business in Virginia, and Sheehan also does its business principally in Virginia. There is evidence that

Virginia is no less convenient than Wisconsin, and even more evidence (inasmuch as the parties give specifics) that Virginia is more convenient than Wisconsin for several key witnesses.

Both the convenience of the parties and witnesses suggest a Virginia forum, but it is the interest of justice analysis that most strongly recommends the proper result in this case. *Coffey* is particularly instructive on the matter:

> Factors traditionally considered in an "interest of justice" analysis relate to the efficient administration of the court system. For example, the interest of justice may be served by a transfer to a district where the litigants are more likely to receive a speedy trial . . . . In a diversity action it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law.

*Coffey*, 796 F.2d 221. Here, Hartford has requested a transfer to the Eastern District of Virginia. CodoniX opposes that transfer in part on the grounds that the action in this Court will be insufferably delayed by litigation in the Eastern District of Virginia. While some delay is certainly a possibility, the Court is confident that it will not be insufferable. The Eastern District of Virginia is known for its propensity to dispose of cases quickly and efficiently. Indeed, it has affectionately come to be known as one of a small group of "rocket dockets" throughout the country. Given that court's speed and efficiency, this Court is confident that coverage claims will not languish there.

Moreover, the activities that gave rise to the coverage claims appear to have taken place in Virginia. CodoniX is a Maryland corporation with its principal place of business in Virginia. Sheehan is a Virginia corporation with its principal place of business in Virginia. Hartford is licensed to issue and does issue insurance policies in Virginia. CodoniX requested,

(presumably from its principal place of business, though no one tells the Court one way or another), that Sheehan secure an insurance policy from Hartford. Sheehan secured the insurance, (presumably from its principal place of business, though, again, no one tells the Court), and Hartford bound itself. Even if Virginia law will not govern this coverage dispute—and the same law will apply no matter which venue this case is heard in, *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990)—no party has indicated any more reason to conduct this litigation in Wisconsin than Virginia.

Finally, this Court cannot compel any Sheehan employees to appear for hearings or trial. Sheehan is a Virginia corporation with its principal place of business in Virginia. All parties to this action agree that Sheehan cannot be impleaded here because this Court has no personal jurisdiction over Sheehan. Moreover, Virginia is well outside the 100-mile radius that limits this Court's subpoena power. *See* Fed. R. Civ. P. 45(b)(2). CodoniX insists that it does not need any Sheehan employee to make its case.[6] But Hartford does, and that is enough. Hartford suggests that, not only does it intend to sue Sheehan—by impleading Sheehan if the action is transferred to Virginia, or by separate action in Virginia if this action is not transferred—but it also intends to call Sheehan employees as witnesses. Hartford has a right to defend itself in this lawsuit. It is not enough for CodoniX to argue that because CodoniX does not need a witness the Court should be satisfied.

---

[6]CodoniX also argues that even if Sheehan is liable to Hartford for the representations it made to CodoniX, that does not affect Hartford's liability to CodoniX. So, as the argument goes, let Hartford recover against Sheehan on its own time, CodoniX does not need Sheehan in the action. Perhaps that is true, but it skips a crucial step in the analysis. To win on the theories CodoniX presents, CodoniX must show that Sheehan made certain representations to CodoniX and that CodoniX could reasonably understand those representations to have been made in the scope of Sheehan's agency. Because the representations Sheehan made to CodoniX are crucial to CodoniX's theory, Sheehan's employees are important witnesses.

-15-

Judicial efficiency cannot be perfectly achieved, nor can the avoidance of prejudice, but they will be better achieved in Virginia. If both coverage and liability claims stay in this Court, Hartford will have to litigate its claims against Sheehan in a separate action. That is not perfectly efficient; but neither is the alternative—transferring the coverage issues to Virginia while the liability issues stay here. Moreover, one party will be prejudiced whether the coverage issues remain in Wisconsin or are transferred to Virginia. Hartford will be prejudiced if coverage issues remain here because it will have to litigate against Sheehan in another forum, thus managing related actions in two fora. The same goes for CodoniX if the coverage issues are transferred to Virginia. The decisive factor, from both an efficiency and prejudice standpoint, is that if the coverage issues stay here key witnesses may be missing because this Court cannot compel the presence of any of Sheehan's employees. A Virginia court can, so it would be more efficient and less prejudicial to conduct litigation in a venue where the litigation may be conducted fully.

The final requirement under § 1404(a) is that the transferee venue be one in which the action may have been brought. § 1404(a). The Eastern District of Virginia could have entertained this case originally by way of diversity jurisdiction, which requires the parties to be of diverse citizenship and the amount in controversy to exceed $75,000. *See* 28 U.S.C. § 1332. Hartford, a Connecticut corporation with its principal place of business in Connecticut, concedes it is subject to jurisdiction in Virginia. CodoniX is a Maryland corporation with its principal place of business in Herndon, Virginia. This insurance coverage dispute far exceeds the $75,000 necessary to satisfy the diversity jurisdiction statute (the dispute is over $3,000,000 in insurance

coverage). Accordingly, in the interest of justice, the third-party claims by CodoniX against Hartford will be severed and transferred to the federal district court in the Eastern District of Virginia.

**C. Stay**

CodoniX has also asked the Court to stay the liability issues until coverage issues have been decided. CodoniX made the request to ensure that it would not be forced to bear the legal expenses of defending a liability action if Hartford is ultimately responsible for bearing those costs. After CodoniX moved for a stay of the liability issues, however, Hartford took up CodoniX's defense under a reservation of rights. There is no longer a concern about placing an undue burden on CodoniX if its request for a stay is denied.

CodoniX also suggests that a stay is necessary because the determination of coverage issues will affect the amount of damages that Aurora may collect, if any. The Agreement states:

> NEITHER PARTY'S TOTAL LIABILITY TO THE OTHER PARTY FOR BREACH OF THIS AGREEMENT SHALL EXCEED THE GREATER OF (A) $750,000; OR (B) THE SUM EQUAL TO THREE (3) TIMES THE AMOUNTS PAID UNDER THIS AGREEMENT. The foregoing limitation shall not apply to limit . . . damages covered by insurance, to the extent of such insurance . . . .

(Am. Compl. Ex. 1 ¶ 10.1.) Damages, then, may not be determined in the action between Aurora and CodoniX until coverage issues are resolved in the action between CodoniX and Hartford. That is a fair point. Still, the action between Aurora and CodoniX has been pending for over two years. Imposing a stay at this point would be both premature (since there are a number of matters

to resolve before damages) and unfair (since all parties have an interest in moving litigation towards completion as quickly as possible). CodoniX's request for a stay is denied. This litigation—the first-party claims—will move forward just as the litigation involving the third-party coverage claims will move forward. If, at a later time, it becomes apparent that a stay is necessary the parties may invite the Court to consider it, or the Court may take up the issue on its own.

### *III. CONCLUSION*

In order to promote convenience and expedite matters, the Court has ordered the third-party claims (coverage issues) bifurcated from the first-party claims (liability issues). Hartford, a third-party defendant, has asked the Court to go one step further and sever the third-party claims in order that they may be transferred to the Eastern District of Virginia. As an initial matter, the Court finds that third-party defendants have standing to request a transfer of venue in the interest of justice pursuant to 28 U.S.C. § 1404(a). That being said, the Court also finds that it is within the interest of justice and more convenient for the parties and witnesses to sever the third-party claims from the first-party claims and to transfer that newly formed action to the Eastern District of Virginia.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

CodoniX's Rule 7.4. Expedited Non-Dispositive Motion for a Bifurcated Trial and for a Stay of Proceedings [Docket No. 28] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The third-party claims shall be bifurcated from the first-party claims.

2. A stay shall not be granted.

Hartford's Motion to Transfer Venue of the Third-Party Case Pursuant to 28 U.S.C. § 1404(a) [Docket No. 51] is **GRANTED**. The third-party claims shall be severed from the first-party claims, and the action formed by the third-party claims shall be transferred to the Eastern District of Virginia.

Dated at Milwaukee, Wisconsin this 29th day of July, 2005.

**BY THE COURT**

**s/ Rudolph T. Randa**

**Hon. Rudolph T. Randa**
**Chief Judge**