**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**AURORA HEALTH CARE, INC., and
ERMED, S.C.,**

        Plaintiffs,

**v.**                                              **Case No. 03-C-612**

**CODONIX, INC.,**

        Defendant.

------------------------------------------------------

**CODONIX, INC.,**

        Counterclaimant,

**v.**

**AURORA HEALTH CARE, INC. and
ERMED, S.C.,**

        Counterclaim defendants.

---

## DECISION AND ORDER

---

Aurora Health Care, Inc. ("Aurora") and ERMED, S.C. ("ERMED") (collectively the "Plaintiffs") sued CodoniX, Inc. ("CodoniX") for breach of contract and declaratory relief. CodoniX responded by filing several counterclaims against the Plaintiffs. The parties subsequently filed their motions for summary judgment, which are now pending before this

1

Court. Aurora's and ERMED's motions for summary judgment seek dismissal of all CodoniX's counterclaims. CodoniX's motion for summary judgment, on the other hand, requests that the Plaintiffs' claim for lost profits and lost cost savings be dismissed.

## BACKGROUND

Aurora operates a network of health care facilities that includes Aurora St. Luke's Medical Center ("St. Luke's") in Milwaukee, Wisconsin, and St. Luke's South Shore ("South Shore") in Cudahy, Wisconsin. (Plaintiff's Proposed Findings of Fact ("PPFOF") ¶ 1.) ERMED provides emergency room physicians for the St. Luke's and South Shore hospitals, while Aurora employs nurses and technicians to assist the ERMED doctors. (*Id.* at ¶¶ 1-2.)

CodoniX makes a computer software product, called Emergency Department Total Clinical Documentation System (the "Software"), which is designed to help emergency room doctors and staff collect and manage data, manage billings, and document medical charts. (Defendant's Proposed Findings of Fact ("DPFOF") ¶ 2.) This litigation arises from two agreements involving CodoniX, one to which Aurora was a party, and the other to which ERMED was a party.

### The Aurora Agreement with CodoniX

In January of 2002, Aurora and CodoniX entered into a Software Distribution Agreement (the "Aurora Agreement"), pursuant to which CodoniX granted Aurora a license to use the Software and to market the Software for use in Aurora facilities. (PPFOF ¶ 4.) Aurora and CodoniX agreed that any licensing agreement that CodoniX might make for use

2

of the Software at an Aurora affiliated entity would require Aurora's prior written approval of its specific terms. (*Id.* at ¶ 6.) Aurora also agreed to "take reasonable precautions to safeguard" CodoniX's Confidential Information. (*Id.* at ¶ 8.)

### The ERMED Agreement with CodoniX

In February of 2002, CodoniX and ERMED entered into a Product Licensing Agreement (the "ERMED Agreement"). (*Id.* at ¶ 10.) Aurora negotiated the terms of the ERMED Agreement with CodoniX. (*Id.*) In the ERMED Agreement, CodoniX granted ERMED a nonexclusive license to use the Software for data collection, billing management, and medical charting at St. Luke's and South Shore's emergency room facilities. (*Id.* at ¶ 11.)

CodoniX agreed, pursuant to Section 2.1.1 of the ERMED Agreement, to install and implement the Software according to specifications of a work plan that the parties were to develop. (*Id.* at ¶ 18.) In addition, CodoniX agreed to "[m]ake consultation services reasonably available to assist [ERMED] with Software . . . development issues." (Leavitt Aff., Ex. A ¶ 2.1.5.)

For its part, ERMED agreed, in Section 3.1.1., to "use reasonable efforts to ensure that all End Users of the Software shall . . . be knowledgeable of the operational and procedural terms and conditions set forth in the Agreement." (PPFOF at ¶ 13.) "End Users" included ERMED, Aurora, and "the employees, agents and representatives of [ERMED] and Aurora." (*Id.* at ¶ 12.) ERMED also agreed, in Section 3.1.5, to "ensure that its End Users . . .

3

cooperate with [CodoniX] to coordinate the provision of the Services set forth in the Work Plan." (*Id*. at ¶ 15.)

**The Work Plan and Pre-Production Acceptance Testing of the Software**

In March of 2002, pursuant to Section 6 of the ERMED Agreement, CodoniX presented a work plan (the "Work Plan") to ERMED and Aurora. (DPFOF ¶ 6.) The Work Plan provided that CodoniX would not only provide the software product that it had developed, but that CodoniX would also incorporate within the Software certain features unique to Aurora. (*Id.* at ¶ 7.)

On July 5, 2002, CodoniX made its initial delivery of the Software to ERMED and Aurora for pre-production testing. (PPFOF ¶ 26.) The ERMED Agreement provided that ERMED would conduct "Preproduction Acceptance Testing" to confirm that the Software operated according to the terms of the ERMED Agreement and the Work Plan. (Fritz Aff. ¶5, Ex. C at ¶ 6.4.) Between July 5, 2002 and April 30, 2003, ERMED and Aurora conducted pre-production acceptance testing of the Software and alleged that the Software did not work properly in several different respects. (PPFOF ¶¶ 28-39.)

For instance, according to the Work Plan, CodoniX was to modify its "order screens" so that they displayed the terminology and procedures that were used at St. Luke's and South Shore, as opposed to the terminology and procedures used at other hospitals that employed CodoniX's software. (*Id.* at ¶ 28.) "Order screens" display the various tests, drugs or treatments available to be ordered for a patient. (*Id.*)

4

Upon receiving the Software, ERMED and Aurora noticed that the modifications to the order screens were not incorporated into the Software. (*Id.* at ¶ 30.) After notifying CodoniX of the problem, CodoniX delivered revised order screens for review in September of 2002, but ERMED and Aurora again were not satisfied that the revisions were properly made. (*Id.* at ¶ 31.) In January of 2003, CodoniX delivered a third round of revised order screens, and once again, ERMED and Aurora found the revisions to be unsatisfactory. (*Id.* at ¶ 32.)

On April 30, 2003, ERMED sent CodoniX a letter terminating the ERMED Agreement "effective immediately." (*Id.* at ¶ 53.) ERMED wrote that "[a]fter more than three rounds of tests, ERMED has concluded that non-curable defaults materially affect the function and desirability of the software as a whole." (Leavitt Aff. ¶ 15, Ex. B.) Accordingly, ERMED requested that within thirty days, CodoniX refund ERMED sums previously paid to CodoniX for the Software. (*Id.*)

On May 27, 2003, ERMED and Aurora filed suit against CodoniX for declaratory relief and breach of contract in the Circuit Court of Milwaukee County. The action was removed to this Court pursuant to 28 U.S.C. § 1332. CodoniX filed several counterclaims against ERMED and Aurora. Specifically, CodoniX alleged that ERMED is liable for breach of contract and breach of the implied covenant of good faith and fair dealing. CodoniX also averred that Aurora is liable for breach of contract and tortious interference with contractual relations.

5

## STANDARD OF REVIEW

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which he bears the burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to

6

establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

## DISCUSSION

### I. Counterclaims Against ERMED

CodoniX alleges that ERMED is liable for breach of contract and a breach of the implied covenant of good faith and fair dealing. The Court will address each allegation in turn.

#### A. Breach of Contract

CodoniX claims that ERMED breached the ERMED Agreement in three respects. First, CodoniX avers that ERMED breached Section 3.1.1 of the ERMED Agreement by failing to "use reasonable efforts to ensure that all End Users . . . be knowledgeable of the operational and procedural terms and conditions" of the ERMED Agreement. Second, CodoniX alleges that ERMED violated Section 3.1.5 of the ERMED Agreement by failing to ensure that all the End Users "cooperate" with CodoniX in the implementation of the Software. And finally, CodoniX claims that ERMED breached Section 9.3 of the ERMED Agreement by failing to maintain the confidentiality of CodoniX's confidential information.[1]

##### (1) Section 3.1.1 of the ERMED Agreement

---

[1] In its response brief, CodoniX also alleged that ERMED violated Section 6.4 of the ERMED Agreement. However, CodoniX never made such an allegation in its counterclaim. Parties cannot amend their pleadings in their summary judgment briefs. *See Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 606 (7th Cir. 2000). Accordingly, the Court ignores CodoniX's argument alleging a breach of Section 6.4 of the ERMED Agreement.

7

Section 3.1.1 of the ERMED Agreement sets forth two obligations with which ERMED had to comply: (1) select and train personnel to operate and maintain the "Configuration," and (2) make "reasonable efforts" to ensure that "End Users" are "knowledgeable of the operational and procedural terms and conditions set forth in the Agreement." (PPFOF ¶ 13.)

With respect to the first obligation, CodoniX provides no evidence showing that ERMED did not comply. The "Configuration" is a defined term meaning "the third party hardware and software configuration recommended by Licensor in consultation with Licensee and set forth in Exhibit C." Exhibit C is a seven page description of the third party software, hardware and network capabilities required to operate the CodoniX software. CodoniX made no attempt to show that the alleged failure of the Software occurred because of any defects in the third party software, hardware or network capabilities. Therefore, there is no triable issue as to any claim regarding the first obligation of Section 3.1.1.

With respect to the second obligation, ERMED was required to make "reasonable efforts" that the "End Users" of CodoniX's software understood the terms and conditions of the ERMED Agreement. ERMED complied with this obligation by creating a committee of "End Users" – ERMED physicians, Aurora nurses and Aurora IT staff – to work with CodoniX to coordinate the implementation of the Software. (PPFOF ¶ 45.) While CodoniX noted that this committee's membership changed several times during the project, CodoniX offered no evidence that the changes deprived the committee of an understanding of the

8

terms and conditions of the ERMED Agreement. ERMED was only required to make "reasonable efforts" to ensure that End Users understood the ERMED Agreement, and the Court sees no reason why forming a committee of End Users to do just that was not such a "reasonable effort." Accordingly, the claim alleging that ERMED violated Section 3.1.1 of the ERMED Agreement is dismissed.

### (2) Section 3.1.5 of the ERMED Agreement

CodoniX also alleges ERMED violated Section 3.1.5, which provides:

> Licensee shall, and shall ensure that its End Users shall, cooperate with Licensor to coordinate provision of the Services set forth in the Work Plan, including providing timely response to requests from Licensor for information or approvals reasonably required by Licensor in order to provide such Services.

(Fritz Aff. ¶5, Ex. C at ¶ 3.1.5) CodoniX claims that ERMED violated Section 3.1.5 by failing to "cooperate" by withholding from CodoniX internal discussions ERMED was having about the status of the ERMED Agreement.

ERMED had no such obligation. Outside the insurance context, Wisconsin has rejected general duties of disclosure between contracting parties. *See, e.g., MacKenzie v. Miller Brewing Co.*, 241 Wis. 2d 700, 716-17 (2001); *Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 107 (1998). Furthermore, CodoniX does not provide any evidence that a duty of disclosure was the intent of the parties when ERMED agreed to "cooperate" with CodoniX. Nor does CodoniX point to any adverse impact on its performance of services that arose from the alleged nondisclosures of these matters. Accordingly, the allegation that ERMED violated Section 3.1.5 of the ERMED Agreement is dismissed.

9

### (3) ERMED's Duty of Confidentiality

Section 9.3 of the ERMED Agreement required that ERMED not disclose confidential CodoniX information to any of CodoniX's competitors. In its counterclaim, CodoniX alleged that ERMED violated Section 9.3 of the ERMED Agreement, but CodoniX has not provided any evidence whatsoever to support its claim. In fact, CodoniX does not even respond to the sworn testimony of ERMED employees denying any disclosure of CodoniX information to any of CodoniX's competitors. Accordingly, the counterclaim alleging that ERMED violated Section 9.3 must also be dismissed.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

CodoniX also filed a counterclaim alleging that ERMED breached its duty of good faith and fair dealing. However, CodoniX does not offer any evidence to support its claim, and its brief is devoid of any argument pertaining to this issue. Because CodoniX did not respond to ERMED's evidence that it did act in good faith, there is no genuine issue of material fact. CodoniX's counterclaim that ERMED breached the covenant of good faith and fair dealing is dismissed.

## II. Counterclaims Against Aurora

CodoniX filed two counterclaims against Aurora. CodoniX alleged that Aurora is liable for breach of contract and tortious interference of contract.

### A. Breach of Contract

CodoniX's counterclaim alleges that Aurora breached its confidentiality obligations

10

in violation of the Aurora Agreement. However, CodoniX offered no evidence in response to the sworn denials by Aurora's employees of any disclosure of confidential information to any of CodoniX's competitors. In fact, CodoniX does not even mention its breach-of-confidentiality counterclaim in its response brief. Accordingly, the Court will grant summary judgment dismissing the breach of contract claim against Aurora.

### B. Tortious Interference of Contract

CodoniX also alleges that Aurora is liable for tortious interference of contract. The five elements for a claim of tortious interference with a contract are as follows:

> (1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship or induced the third party to breach the contract; (3) the interference was intentional; (4) there was a causal connection between the interference and damages suffered by the plaintiff; and (5) the defendant was not justified or privileged to interfere.

*Dorr v. Sacred Heart Hospital*, 228 Wis. 2d 425, 456 (Ct. App. 1999). The critical element here is the fifth element. That is, the central question is whether Aurora, as an intended third-party beneficiary of the ERMED Agreement, was privileged to interfere with the ERMED Agreement.

In Wisconsin, "a party cannot interfere tortiously with its own contract." *Joseph P. Caulfield & Assocs. v. Litho Productions, Inc.*, 155 F.3d 883, 889 (7th Cir. 1998) (applying Wisconsin law). While the Wisconsin courts have not yet addressed the question of whether an intended third-party beneficiary is barred from liability for tortious interference of contract, a Wisconsin court has held that an intended third-party beneficiary has the same

11

rights as a party to enforce the contract. *See Goosen v. Estate of Standaert*, 189 Wis. 2d 237, 249 (Ct. App. 1994). Furthermore, most courts that have considered the question have held that an intended third-party beneficiary of a contract cannot be liable for tortious interference with that contract. *See, e.g., Iraola & CIA, S.A., v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1283 (11th Cir. 2003) ("The intended third-party beneficiary of a contract, legally authorized to enforce the contract, cannot be held liable for tortious interference since he is not a stranger to the contract.") (applying Georgia law); *Nat'l Rural Telecom. Coop. V. DirecTV, Inc.*, 319 F. Supp. 2d 1059, 1072-73 (C.D. Cal. 2003) (under California law, a party that has a direct interest or involvement in a contract, such as an intended third-party beneficiary, is not a stranger to the contract and therefore cannot be liable for tortious interference).

Here, Aurora certainly was not a stranger to the ERMED Agreement. CodoniX negotiated the terms of the ERMED Agreement entirely with Aurora. Furthermore, the ERMED Agreement expressly designated Aurora as a third-party beneficiary because the customizations required of CodoniX were largely for Aurora's benefit. As an intended third-party beneficiary, therefore, Aurora was privileged to interfere with the contract. Such a holding does not conflict with Wisconsin law and is in accord with the holdings of a majority of jurisdictions. Accordingly, the tortious interference claim against Aurora must be dismissed.

## II. CodoniX's Motion for Partial Summary Judgment

CodoniX's motion for partial summary judgment seeks to dismiss the Plaintiffs' claim

12

for lost profits. CodoniX also requests that the Court strike the expert testimony of Rebecca S. Busch ("Busch"), who offered an expert opinion as to the Plaintiffs' lost profits damages.

The Plaintiffs allege that one of the purposes of the Software was to eliminate physician dictation costs and reduce costs associated with paperwork requirements. (Plaintiffs' Statement of Additional Fact ("PSOAF") ¶ 6.) Accordingly, the Plaintiffs argue that if CodoniX is found to have breached the ERMED Agreement, the Plaintiffs would be entitled to the profits they lost as a result of the breach.

The problem with the Plaintiffs' claim for lost profits is that the ERMED Agreement explicitly excludes any award of consequential damages. Section 10.1 of the ERMED Agreement states that "except as may otherwise be set forth herein, in no event will either party be liable for any consequential, indirect, special or incidental damages, whether or not such party has been advised of the possibility of such damage." (emphasis in original removed). And, it is not "otherwise set forth" in the ERMED Agreement that the Plaintiffs would have a right to recover lost profits upon a breach by CodoniX.

The Plaintiffs argue, though, that other provisions of the ERMED Agreement indicate that the parties contemplated damages beyond just a mere refund. An example is Section 6.4. Section 6.4 provides that if "within thirty (30) days of written notice of termination" CodoniX made complete reimbursement to ERMED of all amounts it had paid, that would become ERMED's "sole remedy and [would] preclude any other remedy . . . ." Because CodoniX did not reimburse ERMED within thirty days of the written notice of termination

13

that ERMED sent CodoniX, the Plaintiffs argue that Section 6.4 necessarily implies that additional damages, beyond just a mere refund, are available to the Plaintiffs.

The Plaintiffs also point to Section 10.1 as further proof that they are allowed to collect additional damages beyond just a mere refund. The first sentence of Section 10.1 allows any applicable cap on damages to rise to "the greater of (A) $750,000; or (B) the sum equal to three (3) times the amounts paid under this agreement." This sentence evinces that the parties anticipated that the damages payable by CodoniX were more than the value of a simple refund, but could reach as much as three times or more the value of a refund.

While the Plaintiffs' arguments convince the Court that they are entitled to direct damages beyond a mere refund, they do not demonstrate that the provision barring consequential damages is negated. Lost profit damages are deemed consequential damages under Wisconsin law. *See State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 327 (1999) ("[C]onsequential damages such as lost profits, must be a foreseeable result of a breach of contract."). Typically, contract law only allows an award of foreseeable consequential damages, but Section 10.1 of the ERMED Agreement bars an award of *all* consequential damages, whether they are foreseeable or not. The conclusion, therefore, is inescapable. The Plaintiffs cannot recover lost profits, or any other consequential damages, as a result of CodoniX's alleged breach of the ERMED Agreement.

The Court will grant CodoniX's motion for partial summary judgment by dismissing the Plaintiffs' claim for lost profits. However, the Court will not, at this time, strike Busch's

14

expert testimony. It is not yet clear whether Busch's testimony will aid the trier of fact in calculating other claims for direct damages to which the Plaintiffs may be entitled.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Aurora's Motion for Summary Judgment (Docket No. 79) is **GRANTED**.

ERMED's Motion for Summary Judgment (Docket No. 80) is **GRANTED**.

CodoniX's Motion for Partial Summary Judgment (Docket No. 73) is **GRANTED** in part, and **DENIED** in part. CodoniX's request to dismiss the Plaintiffs' claims for lost profits is **GRANTED**, but CodoniX's request to strike the testimony of Rebecca Busch is **DENIED**.

Dated at Milwaukee, Wisconsin this 2nd day of June, 2006.

> **BY THE COURT**
>
> s/ Rudolph T. Randa
> **Hon. Rudolph T. Randa**
> **Chief Judge**

15

Case 2:03-cv-00612-RTR   Filed 06/02/06   Page 15 of 15   Document 109